# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ROSE ANNA PARK, | ) | CASE NO.: 1:23-CV-01466 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on objections filed by Plaintiff Rose Anna Park to the Report and Recommendation ("R&R") of the Magistrate Judge.

At the outset, the procedural history of this case is unique in that Park was initially represented at the administrative level by Eric Conn, who was later convicted of fraud. Further, her case was heard by ALJ Daugherty, who was also involved and pled guilty in the fraud scheme. Finally, Conn submitted a medical opinion by Dr. Herr, who was also involved in the scheme. On February 2, 2011, ALJ Daugherty found Park disabled beginning on July 31, 2007. Although this history is fully set forth in the R&R a brief overview is helpful. As explained by the Commissioner:

> …Plaintiff is a former client of attorney Eric Conn. Conn's fraud scheme involved ALJs Daugherty and Charlie Andrus and four doctors (Dr. Herr, Frederic Huffnagle, M.D., Bradley Adkins, Ph.D., and Srinivas Ammisetty, M.D.). The ALJs granted claimants' disability applications, relying exclusively on a Conn-submitted medical report signed by one of the doctors involved in the fraud. Conn, Daugherty, and Andrus ultimately pled guilty to the scheme, and one of the four doctors was convicted by a jury (Tr. 678-742, 752-70 (Conn and Daugherty plea agreements)). As outlined in the guilty pleas, Conn provided the doctors with pre-

1

completed, checklist-style medical opinions indicating that claimants had disabling limitations, regardless of the claimants' actual abilities. The doctors signed the forms and provided them to Conn along with sham examination findings. Conn also paid bribes to ALJ Daugherty, who issued favorable decisions relying solely on the fraudulent evidence. ALJ Andrus worked to cover up the scheme through witness retaliation within the agency. See Plea Agreement, *United States v. Conn*, No. 5:17-cr-43 (E.D. Ky. Mar. 24, 2017); Plea Agreement, *United States v. Daugherty*, No. 5:17-cr-66 (E.D. Ky. May 12, 2017); Plea Agreement, *United States v. Andrus*, No. 16-cr-56 (E.D. Ky. June 13, 2016); Jury Verdict, *United States v. Adkins*, No. 5:16-cr-22 (E.D. Ky. June 12, 2017), aff'd, No. 17-6168, 2018 WL 3752494 (6th Cir. Aug. 7, 2018).

In May of 2015, the Commissioner notified Park that it had reason to believe fraud or similar fault existed in her case, in part because it was based on evidence from Dr. Herr. Accordingly, Park's case was heard by a new ALJ in 2016 who, on January 3, 2017 concluded that the record, excluding the evidence from Dr. Herr, did not support a disability finding. Park appealed this decision to this Court, arguing in part that she was denied the opportunity to be heard on the issue of fraud in the Dr. Herr report. *Mills v. Commissioner of Social Security*, No. 1:17-cv-00916 (N.D. Ohio). This Court stayed the matter upon resolution of *Hicks v. Commissioner of Social Security*, 909 F.3d 786 (6th Cir. 2018), wherein the Sixth Circuit held that before disregarding evidence during a redetermination, the agency must provide a factual basis for the reason to believe fraud was involved in providing evidence, and individuals must have a chance to rebut the agency's assertions through a neutral decisionmaker. Id. Accordingly, this Court remanded Park's case to the Commission. On March 14, 2023, an ALJ held a hearing during which Park, represented by counsel, and an impartial vocational expert testified. On April 4, 2023, the ALJ determined that Park was not disabled. Park appealed to this Court.

On April 25, 2024, the Magistrate Judge issued his R&R in this matter recommending that the Court affirm the Commissioner. On May 9, 2024, Park objected to the R&R. On May 13, 2024,

2

the Commissioner responded to the objections. On July 29, 2024, the Commissioner filed a Notice Regarding Overpayments, stating: "Due to the unique concerns posed by the Eric C. Conn fraud cases, the Social Security Administration has changed its policy regarding overpayments resulting from Conn's fraud scheme. This change affects this case as it relates to the relief sought." Doc. 15. The Commissioner explains that to the extent that Park seeks relief from the agency's overpayment assessment, this decision resolves that aspect of her claim. However, the Commission notes that the decision does not moot the action insofar as Park contends that the ALJ's redetermination that she was not entitled to benefits was not supported by substantial evidence.[1] The Court now resolves Park's objections.

District courts conduct *de novo* review of those portions of a magistrate judge's R&R to which specific objections are made. 28 U.S.C. § 636(b)(1). However, in social security cases, judicial review of a decision by the Commissioner is limited to determining whether the decision is supported by substantial evidence based upon the record as a whole. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The substantial evidence standard is met if "a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.*

Park first contends that "the R&R's finding that the ALJ properly found fraud and similar fault by Plaintiff was factually and legally incorrect." Doc. 13, p. 2. Park acknowledges that "it is

---

[1] It is not entirely clear from the facts of this case whether the Commissioner decision not to seek overpayment moots the arguments in this case. However, in an abundance of caution, the Court will resolve the objections on their merits.

clear that Attorney Conn and ALJ Daugherty may have been involved with fraud for some Social Security claimants," but argues that there is no evidence that any fraud was involved in her case. Id. Specifically, Park asserts that "in the absence of supporting and substantial evidence demonstrating that Plaintiff was involved in any fraud or similar fault, her benefits should not have been terminated." Id.

> Upon the finding of fraud, the ALJ excluded records from Dr. Herr, noting:
>
> In this case, Mr. Conn represented the beneficiary/recipient during the initial application for benefits. Additionally, the record contains an examination that occurred in Mr. Conn's office and an opinion by Dr. Herr with the opining satisfying SSA's criteria for establishing disability (Exhibit 20F). Furthermore, the beneficiary's/recipient's original decision awarding benefits was issued by ALJ Daugherty on-the-record, relying entirely on Dr. Herr's report (Exhibit 8A/7). Given the similarities between Mr. Conn's admitted fraud scheme and the facts of this case, there is reason to believe that fraud or similar fault was involved in the submission of evidence from Dr. Herr. Therefore, this evidence has not been considered.

Doc. 12, quoting Tr. 568-70.

Park challenged this conclusion before the Magistrate Judge, asserting that the ALJ failed to set forth specific facts or basis in evidence to exclude Dr. Herr's report. Doc. 6, p. 9. However, in her objection, she appears to abandon this argument, asserting that: "Since the medical evidence, excluding the report from Dr. Herr, in this matter supported a finding of limiting Plaintiff to the sedentary level of exertion, and therefore, finding her disabled, Defendant failed to establish that there was fraud and similar fault in this matter." Doc. 13, p. 2. Considering the ALJ's conclusion of fraud resulted in the exclusion of Dr. Herr's opinion, it is not clear what Park is challenging in this objection other than an overall argument that the ALJ was required to conclude that she was personally involved in the fraud.

On the issue of fraud, the ALJ correctly noted in part that:

In *Hicks v. Commissioner of Social Security*, 909 F.3d 786 (6th Cir. 2018), the Court of Appeals for the Sixth Circuit held that before disregarding evidence during a redetermination, the agency must provide a factual basis for the reason to believe fraud was involved in providing evidence, and individuals must have a chance to rebut the agency's assertions through a neutral decisionmaker.

The R&R sets forth a lengthy recitation of the law and social security rulings applicable to the "reason to believe" standard required to find fraud. Park does not challenge this law. Notably, SSR 22-2p states in part that "to disregard evidence, it is not necessary that the affected beneficiary or recipient had knowledge of or participated in the fraud or similar fault." Id. The ruling further states that "[a] similar fault finding can be made only if there is reason to believe the person knew that the evidence provided was false or incomplete. A similar fault finding cannot be based on speculation or suspicion." This does not mean that Park had to know that the evidence was false or incomplete, but rather the person providing the evidence knew it was false. Here, those individuals were Attorney Conn and Dr. Kerr. Whether Park knew of the fabricated evidence is not at issue. Indeed, the policy interpretation of the ruling supports this conclusion.

> We may find there is reason to believe similar fault was involved in providing evidence based on the actions of any individual whose actions affect the evidence provided in support of the claim, even when such an individual has no direct relationship to the claimant, beneficiary, or recipient or acts without the claimant, beneficiary, or recipient's knowledge or participation. These individuals may include, but are not limited to, claimants, beneficiaries, auxiliaries, recipients, spouses, representatives, medical sources, translators, interpreters, and representative payees. For example, we may have reason to believe a medical source or representative provided false information to support a claim without the knowledge or participation of the claimant, beneficiary, or recipient.

The R&R concludes that:

> The ALJ set forth the proper standards in the decision and explained her reasoning regarding the finding of fraud or similar fault. As part of that explanation, the ALJ considered counsel's argument (the same counsel representing Park on judicial review) that other record evidence supported Dr. Herr's findings, such as the consultative examination, and therefore, whether the ALJ disregarded Dr. Herr's

5

report was irrelevant. (Tr. 595, 600-01.)

Upon review, this Court finds no error in the R&R's conclusion on this issue. The ALJ properly considered the evidence before it in the determination to exclude Dr. Herr's report. Accordingly, Park's objection is overruled.

Next, Park objects to the R&R's conclusion that the ALJ's residual functional capacity determination was supported by substantial evidence. Specifically, she asserts that the evidence supported a conclusion that she was limited to no more than the sedentary level of exertion. Doc. 13, p. 3. On this exact argument, the R&R concluded that substantial evidence supports the RFC findings. Doc. 12, p. 27. The R&R concludes that

> Furthermore, the ALJ's extensive discussion of the relevant medical evidence included several findings that undercut a finding of disability. (Id.) The Court finds it is able to trace the path of the ALJ's reasoning regarding the subjective symptom evaluation in the decision. "Reciting medical evidence does not show that the ALJ's decision is not supported by substantial evidence." *Garcia*, 2023 WL 2333520, at *7 (N.D. Ohio Jan. 27, 2023). And the findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton*, 246 F.3d at 772-73.

Doc. 12, p. 28-29. Similarly, in her objection, Park generally states that "the ALJ failed to support her conclusion that Plaintiff could perform work at the light level of exertion on a full-time and sustained basis." Doc. 13, p. She does not support this argument, however, instead she argues "[t]he medical evidence, however, included imaging which would support a conclusion that Plaintiff was limited to no more than the sedentary level of exertions," and "the record contained evidence supporting a finding that Plaintiff was limited to the sedentary level of exertion." Doc. 13, p. 3, 4.

On the issue of the RFC, the ALJ sets forth five single-space pages of evidence in the

6

record that he considered in determining the RFC. A review of this analysis shows that the ALJ did consider and acknowledge the evidence Park asserts in her objection. For example, Park points to the following evidence to support her conclusion that the ALJ's decision was unsupported by substantial evidence:

> a lumbar MRI in May 2007 indicated mild to moderate spondylosis with diffuse annular disc bulges at L3/4 and L4/5 (Tr. 374-375). Plaintiff had another MRI of her lumbar spine on January 17, 2008 which demonstrated disc bulging at L3/4 with development of mild central canal stenosis, a diffuse disc bulge at L4/5 with mild central canal stenosis with mild compression of the descending left L5 nerve root, and a small central disc protrusion at L5/S1 with right foraminal disc protrusion contributing to moderate narrowing of the right L4 foramen unchanged (Tr. 353-354). The cervical MRI revealed multilevel cervical spondylosis and congenital fusion at C2/3 (T. 359-360).

Far from ignoring this evidence, the ALJ specifically mentions it in the RFC analysis:

> A May 2007 lumbar spine MRI showed mild-to-moderate spondylosis, narrowing of the right lateral recess affecting the right L5 nerve root, as well as foraminal narrowing affecting the right L4 nerve root (Exhibit 3F/23). In June 2007, when receiving pain medication refills, the beneficiary's/recipient's low back pain was described as stable, and methadone was refilled (Exhibit 1F/7). Later that month, the beneficiary/recipient displayed moderate paraspinal lumbar tenderness, and methadone was refilled (Exhibit 1F/5). She continued to exhibit diffuse lumbar tenderness in August 2007, and she was described as stable on medications when methadone was refilled (Exhibit 1F/2-3). In November 2007, the beneficiary/recipient reported increased blood pressure was well was chronic low back pain shooting down the right leg. Her blood pressure was 154/82 (Exhibit 2F/18). The beneficiary/recipient had tenderness on the lumbar spine, and positive straight leg raising on the right. Methadone was refilled (Exhibit 2F/19). In January 2008, the beneficiary's/recipient's low back pain was again described as stable on methadone, and she was experiencing cervical neck pain. The beneficiary/recipient displayed cervical and lumbar paraspinal tenderness upon examination (Exhibit 2F/16-17). A lumbar spine MRI showed slight increased disc bulging at L3-4 with development of mild central stenosis, suspected mild focal compression of the left L5 nerve root, and moderate narrowing of the right L4 foramen (Exhibit 3F/2-3). A cervical spine MRI showed multilevel cervical spondylosis with no evidence of cord compression or high-grade foraminal stenosis and congenital fusion at C2-3 (Exhibit 3F/8). The following month, Zestril and hydrochlorothiazide (HCTZ) were prescribed for hypertension, as her blood pressure was 194/100 (Exhibit 2F/12-13).

Doc. 5, p. 584-85. Upon review, the ALJ clearly considered the evidence that Park points to support her alternative conclusion. The ALJ's decision is far from "cherry-picking" the evidence to support his conclusion. Park also points to opinion evidence from Dr. Mofi Wright and Dr. Winkle to support her contention. However, her argument completely ignores the fact that the ALJ did in fact discuss these opinions and fully explained the weight he gave to each opinion (little weight to Dr. Wright, and some weight to Dr. Winkle). Doc. 5, pg. 579, 80. Park fails to argue that the ALJ made any error in assigning weight to these opinions.

"[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [Claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Park fails to demonstrate that the ALJ failed to apply the proper standard or support the findings with substantial evidence and instead, only points this Court to evidence to support her alternative conclusion. Such an argument requires the Court to re-weigh the evidence, which this Court cannot do.

For these reasons, Park's objections are OVERRULED. This R&R is ADOPTED IN WHOLE. The decision of the Commissioner is hereby AFFIRMED.


Dated: August 28, 2024 /s/ *John R. Adams*
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

8